# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CPCA TRUST 1,<br>    Purported substitute "Plaintiff",<br><br>    v.<br><br>L. Ivan Poblete<br>    Defendant. | Case: 1:14-cv-02063<br>Assigned To : Howell, Beryl A.<br>Assign. Date : 12/5/2014<br>Description: Pro Se Gen. Civil |

## NOTICE OF REMOVAL

1.  NOW COMES L. Ivan Poblete ("Poblete"), and submits this Notice of Removal pursuant to 28 U.S.C. §§ 1331(Federal Question) 18 U.S.C. § 1346, 1332 Diversity Jurisdiction), 1441 (Removal Generally) 1443(1) (Civil Right), 1446(a) and (b) 42 U.S.C. 1983 (Civil action for deprivation of rights), 1985(2) &(3), and 1986 (Action for neglect to prevent).  In support of removal, Poblete submits the following:

### PRELIMINARY STATEMENT

2.  Poblete is unrepresented. Poblete Notices this Court of *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), where the Court stated that;

> "A Pro Se litigant's pleading are to be construed liberally and to a less stringent standard than formal pleadings drafted by lawyers...If a Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so despite the Plaintiff's failure to site proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements" (Citation Omitted)." See also Riley v. Greene, 149 F. Supp. 2d 1256 (D. Colo. 2001)

3.  Pleadings filed by unrepresented litigants shall not be held to the same standard as lawyers and/or attorneys at law (distinct definitions); and whose motions, pleadings and

**RECEIVED**

DEC 0 5 2014

1

all papers may only be **judged by their substance and not their form**. *See: Haines v. Kerner*; *Platsky v. CIA*; *Anastasoff v. United States* (emphasis in bold):

> *Haines v. Kerner*, 404 U.S. 519-421. Unrepresented litigants are **held to less stringent pleading standards** than admitted or licensed bar attorneys. **Regardless of the deficiencies** in their pleadings, unrepresented **litigants are entitled to the opportunity to submit evidence** in support of their claims.

> *Platsky v. C.I.A.*, 953 f.2d. 25. **Court errs** if court dismisses the unrepresented litigant **without instruction of how pleadings are deficient** and how to repair pleadings.

> *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000). Litigants' [substantive] constitutional [guaranteed] rights [not confused with privileges] are violated when courts depart from precedent where parties are similarly situated.

4. Poblete Notices this court of Article IV Sec 1 of the National Constitution.

> "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

SUMMARY

5. Where the Superior Court for the District of Columbia has jurisdiction over all cases at law and equity, the subject matter of the removed case was the sole domain of the equity court. The court was created for the protection of people's rights secured by the Constitution from which the court obtains its power. Poblete's rights have not been protected.

6. Plaintiff commenced a suit entitled *CPCA TRUST 1 v. L. Ivan Poblete et al.*, Case No. 2013 CA 005705 R, although proper service was never effectuated.

7. Further, Plaintiff and purported "substitute" Plaintiff have never joined all indispensible parties, said one indispensible party being a trust.

8. Until all indispensible parties are joined, the thirty (30) day clock to remove doesn't start ticking.

9.   This civil action is removable under 28 U.S.C. §§ 1441 and 1446 because there is Diversity between the Plaintiff and Poblete.

10. Remaining Defendants have additional time to provide their written assent to this Notice. See Mary G. JORDAN, etc., Plaintiff, v. Richard MURPHY, et al., Defendant, 111 F. Supp.2d 1151, (N.D. Ohio, Western Division, 2000).

> "Defendants filed objections to report and recommendation of United States Magistrate Judge denying their joint motion to amend to notice of removal. The District Court, Katz, J., held that failure to include all of multiple defendants in a removal petition could be cured after the time for removal had expired."

11. Further, 28 U.S.C. § 1441 is implicated owing to para. 1, *supra*, and because Poblete's Property Rights have been threatened by a procedure utterly devoid of any propriety, standing or Jurisdiction.

12. Removal is proper as the amount in controversy exceeds $75,000, there is Diversity between parties and there are substantial federal questions involving Substantive and Procedural Due Process Rights. *Lake Street v. Farmer's Loan & Trust Co.*, 72 F. 804 (N.D. Ill 1896). The case may not be remanded absent a Consent Decree or Stipulation: *Aetna Life Ins. Co. v. Danbury Square Assoc., Ltd. Partnership*, 150 B.R. 544 (SDNY Bankruptcy 1993).

13. Despite the purported amount claimed to be owing, Plaintiff has never complied with demands for strict proof, to include a verified accounting. Therefore, Poblete has no knowledge of a sum certain and is unsure of the actual proven amount, if any, owing.

14. The Plaintiff, who improperly substituted another "plaintiff" admitted that it did not join all indispensible parties (Def. Exhibit "Ex" 1- complaint)

15.  The United States District Court has proper subject matter jurisdiction and venue over all claims in this action. Poblete's substantive defenses are largely grounded in application of Federal Rules and Laws from the banking and mortgage industry.

16.  The time for removal has not expired, as Poblete was never properly served and indispensible parties have not been joined.

17.  Poblete has a right to remove.

3

18.   A copy of this notice of removal is being served on plaintiff, and the Clerk of Courts of the Superior Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5 day of December  2014,  District of Columbia.


L. Ivan Poblete                                                       Ivan Poblete, Trustee

**CERTIFICATE OF SERVICE**

I Luis Ivan Poblete, hereby certify that on this 5 day of December 2014, a copy of the foregoing document filed in the United States District Court for the District of Columbia was mailed via first class mail, postage pre-paid to the following recipients.

*Attorney for Plaintiff:*
Patrick Jules, Esq. 1011142
Mark Wittstadt, Esq. 497735
Gerard Wm. Wittstadt, Jr., Esq. 497127
David Chen, Esq. 1000517
c/o Morris, Hardwick, Schneider, LLC
22375 Broderick Drive
Dulles, Virginia 20166

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5 day of December 2014, District of Columbia.

L. Ivan Poblete



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

CPCA TRUST 1
    Vs.                                        C.A. No.      2013 CA 005705 R(RP)
L. IVAN POBLETE

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge NATALIA COMBS GREENE
Date:  August 21, 2013
Initial Conference: 9:00 am, Friday, November 22, 2013
Location: Courtroom 317
      500 Indiana Avenue N.W.
      WASHINGTON, DC 20001                                  Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: 879-1133

CPCA Trust I

                                    Plaintiff,
                    vs.

L. Ivan Poblete

                                    Defendant   Case Number **1 3 ~ 0  0 0 5 7 0 5**


### SUMMONS

To the above named Defendant:

  You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

  Your are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Patrick Jules
Name of Plaintiff's Attorney                         *Clerk of the Court*

9409 Philadelphia Rd                      By_____
Baltimore, MD 21237                                      Deputy Clerk
(410) 284-9600
                                          Date_____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요      የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ

  IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

  If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, DC 20001 Teléfono 879-1133

Demandante,

contra                              Número de Caso: _____

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

**Patrick Jules**
_____
Name of Plaintiff's Attorney

**9409 Philadelphia Rd**
_____
**Baltimore, MD 21237**
_____
**(410) 284-9600**
_____

*SECRETARIO DEL TRIBUNAL*

By_____
                    Subsecretario

Date_____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오           የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**DISTRICT OF COLUMBIA SUPERIOR COURT**
**CIVIL BRANCH**
500 Indiana Avenue, NW
Washington, D.C. 20001

RECEIVED
Civil Clerk's Office
AUG 2 1 2013
Superior
District ...bia
Washington ...

CPCA TRUST 1
c/o Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, MD 21237

Case No.: _____

Plaintiff,

**13 - 0 0 0 5 7 0 5**

v.

Judge Assigned:
Next Event:

**L. IVAN POBLETE**
4130 16th Street, NW
Washington, DC 20011

Defendant(s).

---

### COMPLAINT FOR JUDICIAL FORECLOSURE

### ACTION INVOLVING REAL PROPERTY

CPCA Trust 1 ("Plaintiff") by and through counsel, Mark H. Wittstadt, Gerard Wm. Wittstadt, Jr., David Chen, Patrick Jules, and Morris | Hardwick | Schneider, LLC, files this action seeking a judicial foreclosure, pursuant to *D.C. Code § 42-816*, and states as follows:

### PARTIES AND JURISDICTION

1.    L. Ivan Poblete ("L. Ivan Poblete") is the former record owner of certain real property

located at 4130 16th Street, NW, Washington, DC 20011, more specifically described as:

> Part of Lot Numbered Nineteen (19) in Mary Gresham Machon's Subdivision of Lots
> in Square Numbered Twenty-Six Hundred Thirty-Six (2636); Being the Easterly 79.5
> feet depth by the full width of said Lot Nineteen (19), as per Plat recorded in the
> Office of the Surveyor for the District of Columbia in Liber 73 at folio 96. Known for
> tax purposes a lot 802 square 2636.

(hereinafter "the Property") by virtue of a title deed, recorded with the Recorder of Deeds as Document Number 2006014313 see attached Deed, Exhibit A.

Property was subsequently vested to NW trust, Valparaiso by virtue of a title deed recorded with the Recorder of Deeds as Document Number 2010027198, and recorded on March 29, 2010, see attached Deed, Exhibit A.

2.  The Property is located within the District of Columbia.

3.  Plaintiff is the beneficiary of a Note secured by the Property.

4.  The Court has personal jurisdiction over the Defendant herein.

5.  Venue is proper in the Superior Court of the District of Columbia.

## FACTS

6.  On January 29, 2007, Plaintiff encumbered the Property with a Deed of Trust securing a Note in the original principal amount of Eight Hundred Ninety-Eight Thousand Four Hundred and 00/100 Dollars ($898,400.00), see attached Note, Exhibit B, and Deed of Trust, Exhibit C, both of which are incorporated hereto by reference.

7.  The Deed of Trust was recorded with the Recorder of Deeds for the District of Columbia on March 23, 2007 as Document Number 2007040525.

8.  The original Lender, Lehman Brothers Bank, FSB, A Federal Savings Bank, assigned its rights under the Note and Deed of Trust to Plaintiff, see Exhibit D attached and incorporated hereto by reference.

9.  The Plaintiff is the current holder of the Note and beneficiary of the Deed of Trust aforesaid.

## COUNT I - Judicial Foreclosure

**Plaintiff incorporates by reference all those facts and allegations contained above.**

10.  On March 1, 2007, L. Ivan Poblete defaulted on the Note by failing to make the required payments due and owing under the Note.

11.   On or about May 9, 2013 pursuant to the Deed of Trust, Plaintiff caused to be mailed to L. Ivan Poblete a demand letter stating the total amount needed to cure the default, see attached Exhibit E.

12.   L. Ivan Poblete failed to cure the default, and therefore, pursuant to the terms of the Deed of Trust, the loan was accelerated.

13.   The account is due and owing as of September 9, 2013 for the following:

|   |   |   |
|---|---|---|
| a. Unpaid Principal Balance: | $ | 898,400.00 |
| b. Interest Due | $ | 519,238.53 |
| c. Total-Fees | $ | 26.50 |
| d. Accum Late | $ | 5,777.03 |
| e. Recoverable Balance | $ | 15,545.02 |
| f. Escrow Advance | $ | 53,338.37 |
| Total | $ | 1,492,325.45 |

14.   Interest, taxes, insurance and other elements of the debt continue to accrue daily.  Costs and legal fees incurred herein may be added to the debt consistent with the Deed of Trust.

15.   Department of Defense records indicate L. Ivan Poblete is not in active military duty, see attached Exhibit F.

16.   Plaintiff lawfully appointed Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr., ("the Wittstadts") as Substitute Trustees under the Deed of Trust through a Deed of Appointment of Substitute Trustees recorded with the Recorder of Deeds for the District of Columbia, see attached Exhibit G.

17.   D.C. Code §42-816 permits the court to decree "that the mortgagor be foreclosed and barred from redeeming the mortgaged property."

18. Plaintiff is entitled to enforce its Deed of Trust via a judicial foreclosure of the Property.

19. D.C. Code §42-815.02, only applies to a non-judicial foreclosure proceeding under the power of sale clause of the deed of trust, which in this instant case does not apply.

20. Neither mediation nor any mediation certificate is required herein.

21. Plaintiff is willing to participate in a mediation conducted by a neutral third-party mediator if Defendant(s) appears and requests the same.

22. Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. have already been appointed as Substitute Trustees for purposes of foreclosure, and have knowledge and experience in the foreclosure field, they should be authorized to carry out the foreclosure by sending notices to affected parties and publishing advertisements consistent with the terms of the Deed of Trust and District of Columbia Code, and thereafter selling the property at auction subject to confirmation or ratification by this Court.

23. Alternatively, Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. may be appointed as Officers of the Court for purposes of selling the Property under SCR-308(b).

24. The Plaintiff should be permitted to submit bid(s) at the sale aforesaid on credit up to the full amount of the debt and all costs incurred under the terms of the Note and Deed of Trust.

25. After the foreclosure sale, the Substitute Trustees will file with the Court a Verified Report of Sale in compliance with SCR-308(b)(4).

26. The Trustee / Officer appointed to sell the Property is entitled to receive a Trustee's Commission per the Deed of Trust and D.C. Code, and may request the same in the Verified Report of Sale.

27.   Pursuant to the Deed of Trust your Plaintiff is entitled to collect all expenses incurred in pursuing the remedies provided under the Deed of Trust, including, but not limited to reasonable attorneys' fees, filing fees, costs of publication, costs associated with the sale, mailing costs, and the costs of title evidence, proof of which will be submitted in the Verified Report of Sale prior to ratification or confirmation.

**WHEREFORE,** Plaintiff prays this Honorable Court grant the following relief:

1.   That this Court find that the Defendant is in default on the mortgage obligation;

2.   That this Court Order and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. to act as Trustee or Officer to sell the real property and improvements thereon known as 4130 16th Street, NW, Washington, DC 20011 at public auction and to send appropriate notices and publish advertisements for the same;

3.   That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. should be permitted to auction the Property aforesaid on a date and in a manner deemed appropriate, to continue the auction for a period not to exceed thirty (30) days without further leave of court, and enter into a contract of sale for the property which contract shall be subject to review and confirmation or ratification by this Court;

4.   That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. shall be ordered to submit a Verified Report of Sale to this Court within a reasonable time following the auction;

5.   That this Court award all appropriate commissions due to the Trustees and Auctioneer as set forth in the Deed of Trust;

6.   That this Court award the Plaintiff their reasonable attorney fees and costs incurred in the instant action;

7.   That this Court enter a deficiency judgment for any amounts remaining due on the Note following the completion of the foreclosure; and

8.   That. this Court grant such further relief as may be necessary and just under the circumstances.

### COUNT II - Judicial Sale (Alternative)

**Plaintiff incorporates by reference all those facts and allegations contained above.**

28.   To the extent that a judicial foreclosure cannot be had, D.C. Code §42-816 also permits the Court to decree a judicial sale of the entire Property.

29.   A judicial sale would be a sale in absolute, requiring joinder of all lienholders or parties who have an interest in the subject premises.

30.   Lienholders known at this time include:

> Lehman Brothers Bank, FSB
> Serve On: 327 Inverness Drive South
> Englewood, CO 80112

31.   The inclusion of said additional party will significantly increase the time and expense of this process to the detriment of the borrower without significant advances in justice or equity, therefore it is not believed that this approach should be used absent title defects or other issues which would prevent a normal judicial foreclosure.

32.   No title defects or other issues are known to exist at this time.

33.    To the extent that a defect or issue would be discovered in the course of this action, your Plaintiff moves this Court to permit amendment of the action to include any necessary party to accomplish complete justice.

WHEREFORE, the foregoing premises considered, to the extent that a judicial foreclosure cannot be had, your Plaintiff moves this Court to permit amendment of this Complaint to join all interested parties, to order a judicial sale in satisfaction of the debt owed to Plaintiff on such terms and conditions the Court may deem appropriate under the law, to enter a deficiency

judgment should amounts remain unpaid on the Note following the sale, and to issue such other

and further direction as may be necessary to accomplish complete relief.

<u>Verification</u>

I solemnly affirm under the penalties of perjury that the account information set forth above are true to the best of my knowledge, information, and belief.

CPCA Trust 1

By: _____

Signature: _____ Carine Foi _____

Title: _____ ~~Vice President~~ _____

Selene Finance LP as ~~Attorney-In-Fact~~

State of _TEXAS_
County/City _HARRIS / HOUSTON_

On this _15th_ day of _August_, 2013, before me, the undersigned officer, personally appeared _Carine Foi_ who is the _AVP_ of CPCA Trust 1, known to me (or satisfactorily proven) to be the person whose name are subscribed to the within Verification and acknowledged he/she executed same in his/her capacity as _AVP_ for the purposes therein contained.

In witness hereof I hereunto set my hand and official seal.

_Daniella M Banks_
NOTARY PUBLIC
My Commission expires: _6-18-2017_

DANIELLA M. BANKS
Notary Public, State of Texas
My Commission Expires
June 18, 2017

Respectfully submitted

_____
Mark Wittstadt, Esq. No. 497735
Gerard Wm. Wittstadt, Jr., Esq. No. 497127
David Chen Esq. No. 1000517    Patrick Jules 1011142 ✓
Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, Maryland 21237
410-284-9600
dchen@closingsource.net
dchen@closingsource.net
Attorney for Plaintiff

**EXHIBIT A**

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved



**DEED**

Made this 25 day of March, 2010 by and between L. IVAN POBLETE , party(ies) of the first part, AND 4130 16TH Street NW trust,  Valparaiso Trust, Trustee, party(ies) of the second part:

WITNESSETH, that in consideration of the sum of $NONE, receipt of which is hereby acknowledged, and which the party(ies) of the first part certify under the penalties of perjury as the actual consideration paid or to be paid, including the amount of any mortgage or deed of trust outstanding, the said party(ies) of the first part do(es) grant and convey unto the party(ies) *of the second part in fee simple, all that property situate in Washington DC, described as:*

4130 16th Street, NW, Washington, DC 20011

Lot: 802   Square:2636

Part of Lot numbered Nineteen (19) in Mary Gresham Machon's subdivision of Lots in Square numbered Twenty-Six Hundred Thirty-Six  (2636); being the Easterly 79.5 feet depth by the full width of said lot Nineteen (19), as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 73 at Folio 96

Know for Tax Purposes as lot 802 Square 2636

BEING the same property conveyed unto L. IVAN POBLETE by Deed dated January 25th, 2006 and recorded January 30th, 2006 as Instrument No. 2006014131 among the District of Columbia Recorder of Deeds.





Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

The parties hereby certify under the penalty of perjury that this transfer is without consideration and is therefore not subject to transfer or recordation taxes.

SUBJECT to covenants, easements and restrictions of record.

TO HAVE AND TO HOLD said land and premises above described or mentioned and hereby intended to be conveyed, together with the buildings and improvements thereupon erected, made or being, and all and every title, right, privileges, appurtenances and advantages thereunto belonging, or in anywise appertaining, unto and for the proper use only, benefit and behoof forever of said party(ies) of the second part in fee simple.

Doc# 2010027198 Fees:$26.50
03/29/2010    2:54PM  Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

WITNESS my (our) hand(s) and seal (s) on the day and year first herein before written.

Signed, sealed and delivered

in the presence of :

ADRIANA SANCHEZ

_____(Seal)
L. IVAN POBLETE

STATE OF MARYLAND          )
COUNTY OF PRINCE George's  ) to wit:

On this 25 day of MARCH_____, 2010, before me, the undersigned officer, personally appeared L. IVAN POBLETE, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he has executed the same for the purposes therein contained.
In witness whereof, I have hereunto set my hand and official seal.

Adriana Sanchez

My commission expires: 30 June 2010

Notary Public



RECORDING
SURCHARGE

$    20.00
$     6.50

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved



LY1-5-2006014131-1

After Recording, Mail to:
Elyzabeth Holford, ESQ.
RED BOX SETTLEMENTS
1612 U Street NW #405
Washington, DC 20009



LT2-8-8-2

## SPECIAL WARRANTY DEED

THIS WARRANTY DEED, made this the 25th day of January, 2006 by and between **HASHIM HASSAN**, as a Sole Owner, Grantor, party of the first part, and **L. IVAN POBLETE**, as a Sole Owner Grantee, party of the second part.

WITNESSETH, that in consideration of the sum of $889,000.00, party of the first part does hereby grant unto the party of the second part, in fee simple, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows:

4130 16th Street, NW, Washington, DC 20011

Lot: 802    Square: 2636

**Part of Lot numbered Nineteen (19) in Mary Gresham Machon's subdivision of Lots in Square numbered Twenty-Six Hundred Thirty-Six (2636; being the Easterly 79.5 feet depth by the full width of said Lot Nineteen (19), as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 73 at Folio 96.**

**Know for Tax Purposes as Lot 802 Square 2636.**

AND the said party of the first part covenants that he/she/they will warrant specially the property hereby conveyed, and that he/she/they will execute such further assurances of said land as may be requisite.

Document provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

WITNESS the hand and seal the day and year first hereinbefore written.

IN THE PRESENCE OF:

_____                    _____
Witness                                          Hashim Hassan


## NOTARY ACKNOWLEDGEMENT

District of Columbia

I, Sharon Rodriguez _____, a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that Hashim Hassan, personally well known to me as the grantor in and the person who executed the foregoing and annexed deed, bearing the date of the 25th day of January, 2006, personally appeared before me in the said District and acknowledged the said deed to be his/her/their act and deed.

Given under my hand and seal this the 25th day of January, 2006.


_____                    (seal)
Notary Public



Sharon Rodriguez
Notary Public, District of Columbia
My Commission Expires 10-14-2008

Doc# 2006014131 Fees:$19584.50
01/30/2006    1:38PM Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING                  $      20.00
SURCHARGE                  $       5.50
RECORDATION TAX FEE        $   9,779.50
TRANSFER TAX FEE           $   9,779.00

**EXHIBIT B**

100025440003616734
0045240702     *ALC*

# NOTE

January 29, 2007                    ROCKVILLE                              MARYLAND
[Date]                                    [City]                                   [State]

4130 16TH STREET, NW, WASHINGTON, DISTRICT OF COLUMBIA 20011
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   898,400.00       (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is

LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of      8.750   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    first day of each month beginning on     March , 2007         . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on    February 1 , 2037        , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at    LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO  80112     or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    7,067.72      .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-SN (0207)                  Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                           Initials: _____



100025440003616734
0045240702

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



100025440003616734
0045240702

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
L  IVAN POBLETE                    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                        -Borrower

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB

By: _____
E. Todd Whittemore
Vice President

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.

BY: _____        *[Sign Original Only]*
PAUL E. SVEEN
AUTHORIZED SIGNATORY





100025440003616734
0045240702

# INTEREST-ONLY ADDENDUM
## TO FIXED RATE PROMISSORY NOTE

LOAN NUMBER: 0045240702

PROPERTY ADDRESS: 4130 16TH STREET, NW, WASHINGTON, DISTRICT OF COLUMBIA 20011

THIS ADDENDUM is made this 29th   day of January                    ,   2007  , and is
incorporated into and intended to form a part of the Fixed Rate Note (the "Note") dated the same
date as this Addendum   executed   by   the   undersigned   and   payable        to
    LEHMAN BROTHERS BANK, FSB                                        (the Lender).

THIS ADDENDUM supersedes Sections 3 and 6(A) of the Note.  None of the other provisions
of the Note are changed by this Addendum.

3.   PAYMENTS

   (A)  Time and Place of Payments

          I will pay interest by making payments every month for the first        60    payments
(the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay
principal and interest by making payments every month thereafter for the next     300   payments
in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end
of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

          I will make my monthly  payments  on  the  first  day  of  each  month  beginning  on
    March 1 , 2007                    .  I will make these payments every month until I have paid all of
the principal and interest and any other charges described below that I may owe under this Note.
Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before principal. If, on   February 1, 2037      , I still owe amounts under this Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."

          I will make my payments at 327 INVERNESS DRIVE SOUTH ., ENGLEWOOD, CO  80112
                                                                                                                          ,
or at a different place if required by the Note Holder.

   (B)  Amount of Monthly Payments

          My monthly payment for the first       60      payments  will be in the  amount of
U.S. $      6,550.83 .  This payment amount is based on the original principal balance of the
Note.  If I make voluntary prepayments of principal during the Interest-Only Period, my payment
amount for subsequent payments will be reduced to the amount necessary to pay interest on the
lower principal balance.  Beginning on 03/01/12              , assuming the principal balance has
not changed during the Interest-Only Period, my monthly payments will be in the amount of U.S
$          7,386.14 .  If the principal balance has changed during the Interest-Only Period, my
monthly payments will be set in an amount sufficient to fully amortize the outstanding principal
balance at the end of the Interest-Only Period over the remaining term of the Note.  Once this
payment amount has been set, it will not be reduced due to any further voluntary prepayments.

004524070

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A)   Late Charge for Overdue Payments**

      If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00% of my overdue payment of interest during the Interest-Only Period,    5.00% of my overdue payment of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

Dated: _January 29, 2007_____

_____
Borrower  L IVAN POBLETE

_____
Borrower

_____
Borrower

_____
Borrower

# Priority
# Note Addendum and Rider Checklist

**Loan Number:**   0045240702
**Date** :   1/29/2007
**From:**   NELLIE COCKEY
**Subject:**                  **Special Signing Instructions**

---

Note Addenda – all of the following selected documents (identified by an "X" or checkmark, etc.) must be signed and returned to the lender with the closing package:

- ☒ Interest-Only Addendum
- ☐ Adjustable Rate Note Addendum
- ☐ Prepayment Note Addendum
- ☐ Balloon Note Addendum

Deed of Trust/Mortgage Addenda and Riders – all of the following selected documents (identified by an "X" or checkmark, etc) must be signed and sent with the security instrument for recording. A copy of the signed document must be returned to the lender with the closing package.

- ☐ Adjustable Rate Rider
- ☐ Balloon Rider
- ☐ Condominium Rider
- ☐ PUD Rider
- ☐ Second Home Rider
- ☐ 1-4 Family Rider
- ☐ Prepayment Rider
- ☐ Addendum to Adjustable Rate Rider
- ☐ Interest-Only Addendum to Adjustable Rate Rider

**EXHIBIT C**

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

*Prepared by:*
Return To:
AURORA LOAN SERVICES, LLC.
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363


LT1-5-2007040525-1


LT2-0-0-18

——————— [Space Above This Line For Recording Data] ———————

## DEED OF TRUST

Parcel ID# SQUARE 2636 LOT 802       MIN   100025440003616734

3770810 HQ

After Recording Return to:
Montgomery Title, Inc.
1300 Piccard Dr, Ste 105
Rockville, Maryland 20850
(301) 795-2000   (301) 795-6864

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   January 29, 2007
together with all Riders to this document.

(B) "Borrower" is

    L IVAN POBLETE

Borrower's address is   4130 16TH STREET, NW, WASHINGTON, DC 20011
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is   LEHMAN BROTHERS BANK, FSB,A FEDERAL SAVINGS BANK

Lender is a   FEDERAL SAVINGS BANK
organized and existing under the laws of   UNITED STATES
Lender's address is

(D) "Trustee" is   RICK SKOGG

Trustee's address is

DISTRICT OF COLUMBIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP®-6A(DC) (0204).02     Form 3009 1/01
(rev. 5/02)
Page 1 of 15     Initials: L I

VMP Mortgage Solutions, Inc

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

1000254400003616734
0045240702

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **January 29, 2007**
The Note states that Borrower owes Lender

**EIGHT HUNDRED NINETY EIGHT THOUSAND FOUR HUNDRED & 00/100**                    Dollars
(U.S. $      **898,400.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       **February 1, 2037**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider          ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(DC) (0208).02                    Page 2 of 15          Initials: ___          Form 3009 1/01 (rev. 5/02)

Document provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

100025440003616734
0045240702

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:

PART OF LOT NUMBERED NINETEEN (19) IN MARY GRESHAM MACHON'S SUBDIVISION OF
LOTS IN SQUARE NUMBERED TWENTY-SIX HUNDRED THIRTY-SIX (2636; BEING THE
EASTERLY 79.5 FEET DEPTH BY THE FULL WIDTH OF SAID LOT NINETEEN (19), AS PER
PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN
LIBER 73 AT FOLIO 96. KNOW FOR TAX PRUPOSES A SLOT 802 SQUARE 2636.

Parcel ID Number:                                          which currently has the address of
  4130 16TH STREET, NW                                                              [Street]
Washington, District of Columbia    20011    [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(DC) (0205) 02                    Page 3 of 16                Initials:              Form 3009 1/01 (rev. 5/02)

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

100025440003616734
0045240702

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

-6A(DC) (0009).02                         Page 4 of 15          Initials ____          Form 3009 1/01 (rev. 5/02)

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

100025440003616734
0045240702

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

-6A(DC) (0005).02                    Page 7 of 16          Initials: L V      Form 3009 1/01 (rev. 6/02)

Document id provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

10002544003616734
0045240702

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(DC) (0700) 02

Page 8 of 15

Initials: [handwritten]

Form 3009 1/01 (rev. 5/02)

Document provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

10002544000361673 4
0045240702

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2008. All rights reserved

100025440003616734
0045240702

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(DC) (0305).02                                Page 10 of 15                          Initials: ___          Form 3009 1/01 (rev. 5/02)

Documents provided by DataTree LLC via its proprietary Imaging and delivery system. Copyright 2003, All rights reserved.

100025440003616734
0045240702

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

Initials: ____

Document provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of         % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____.        _____ (Seal)
                                          L  IVAN POBLETE                -Borrower


                                                    (Address)


_____.        _____ (Seal)
                                                                         -Borrower


                                                    (Address)


_____ (Seal)        _____ (Seal)
                        -Borrower                                        -Borrower


          (Address)                                 (Address)


_____ (Seal)        _____ (Seal)
                        -Borrower                                        -Borrower


          (Address)                                 (Address)


_____ (Seal)        _____ (Seal)
                        -Borrower                                        -Borrower


          (Address)                                 (Address)


-6A(DC) (0305) 02          Page 14 of 15           Form 3009 1/01 (rev. 5/02)

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

100025440003616734
0045240702

~~State of Maryland~~
~~DISTRICT OF COLUMBIA, ss:~~                          Montgomery

I,       **Anthony Philip Gentilcore III**                  , a Notary Public in and for the District
of Columbia, do hereby certify that        L   Ivan   Poblete

personally known to me as the person(s) who executed the foregoing instrument bearing date of   29ᵗʰ
day of   January   207       , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this       29 day of   January   , 207

Notary Public, D.C.                                                                 (Seal)

VMP -6A(DC) (0308).02                 Page 15 of 16          Initials: _____          Form 3009 1/01 (rev. 8/02)

Document provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003. All rights reserved.

★ ★ ★

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

| SECURITY AFFIDAVIT — CLASS 1 | | |
|---|---|---|
| _2636_ | | _802_ |
| Square | Suffix | Lot |

I, (We) the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1,1982 (D.C. Law 4-164; D.C. Code 22-2405), that the real property described within is Class 1 Property, as that class of property established pursuant to D.C. Official Code 47-813(C-6)(2).

_____
Signature

_____
Signature

Subscribed and sworn to me before this [25] day of [January], 200 [7].

_____
Notary Public

My Commission Expires: [09/a/2005]
mmddyyyy

Doc# 2007048825 Fees:$124.50
03/23/2007   9:17AM Pages 15
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING        $        118.00
SURCHARGE        $          6.50

# EXHIBIT D

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved Doc# 2011007385

513643

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

RETURN TO:
Atlantic Law Group, LLC
Attn:  Assignments/Pre-sale
803 Sycolin Road, Suite 301
Leesburg, VA  20175

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

District of Columbia, District of Columbia
SELLER'S SERVICING #:0045240702 "POBLETE"
OLD SERVICING #: FC

MERS #: 100025440003616734  VRU #: 1-888-679-6377

Date of Assignment: January 11th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL  61834
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE  69361

Executed By: L IVAN POBLETE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Deed of Trust: 01/29/2007 Recorded: 03/23/2007 as Instrument No.: 2007040525 In District of Columbia, State of District of Columbia

Property Address: 4130  16TH STREET, NW, WASHINGTON, DC  20011

Square Number: 2636,   Lot Number: 802
Legal: PART OF LOT NUMBERED NINETEEN (19) IN MARY GRESHAM MACHON'S SUBDIVISION OF LOTS IN SQUARE NUMBERED TWENTY-SIX HUNDRED THIRTY-SIX (2636; BEING THE EASTERLY 79.5 FEET DEPTH BY THE FULL WIDTH OF SAID LOT NINETEEN (19), AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 73 AT FOLIO 96. KNOW FOR TAX PRUPOSES A SLOT 802 SQUARE 2636.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK IT'S SUCCESSORS AND ASSIGNS
On January 11th, 2011

By: _Jan Walsh_
JAN WALSH, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON January 11th, 2011, before me, IRENE GUERRERO, a Notary Public in and for the County of Scotts Bluff County, State of Nebraska, personally appeared JAN WALSH, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

"RRG"RRGALS!*05/11/2011 11:07:10 AM* ALS!01ALS!A0000000000000000093663* DC!WASH!* 0045240702 DC!STATE_TRUST_ASSIGN_ASS!N "RRGALS!"

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003. All rights reserved.

Doc# 2011007385
Filed & Recorded
01/18/2011   16:36:16 PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
    E-RECORD                    $          20.00
    ESURCHARGE                  $           6.50
Total:                         $          26.50

**PREPARED BY:**
U.S. Bank National Association, as Trustee for the
Residential Loan Trust 2008-2
c/o 350 Highland Drive, Lewisville, TX 75067
**WHEN RECORDED RETURN TO:**
Avenue365 Lender Services
4000 Chemical RD, Ste 440
Plymouth Meeting, PA 19462


Tax ID: Lot 802 Square 2636

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, Aurora Loan Services, LLC ("ASSIGNOR/GRANTOR"), hereby
grants, conveys, assigns to:

**U.S. Bank National Association, as Trustee for the Residential Loan Trust 2008-2**
c/o One Federal St., 3rd Floor, Boston, MA 02110

("ASSIGNEE/GRANTEE") all beneficial interest under that certain **DEED OF TRUST** dated 1/29/2007, and
executed by **L. IVAN POBLETE**, borrower(s), in the amount of $898,400.00 to Mortgage Electronic
Registration Systems, Inc., solely as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank, its
successors and assigns, as original lender, Rick Skogg, as original trustee, and certain instrument recorded
3/23/2007, in Doc#: 2007040525, in the Official Records of Washington, District of Columbia, covering the
following described property:

**4130 16th Street NW, Washington, DC 20011:**

**Part of Lot numbered Nineteen (19) in Mary Gresham Machon's subdivision of
Lots in Square numbered Twenty-Six Hundred Thirty-Six (2636; being the Easterly
79.5 feet depth by the full width of said Lot Nineteen (19), as per plat recorded in
the Office of the Surveyor for the District of Columbia in Liber 73 at Folio 96.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Document.

Dated: _March 21, 2013_

ASSIGNOR: Aurora Loan Services, LLC

By _Helen M. Placente_
Name: _Helen M. Placente_
Title: _Vice President_

STATE OF Colorado ) SS
COUNTY OF Douglas )

On the 21st day of March _____ in the year 2013, before me, the undersigned, a Notary Public in and for said State, personally appeared, Helen M. Placente, Vice President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me, that they executed the same in their capacity, that by their signature on the instrument, the individual or the person upon behalf which the individual acted, executed the instrument.

WITNESS my hand and official seal

NOTARY PUBLIC, State of Colorado
Printed Name: Melissa L. Bauman
My Commission Expires: 6/11/2016

MELISSA BAUMANN
NOTARY
PUBLIC
STATE OF COLORADO

Property at 4130 16th Street NW, Washington, DC 20011

Doc# 2013061653
Filed & Recorded
05/29/2013   08:27:05 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  ERECORD                    $        150.00
  ESURCHARGE                 $          6.50
Total:                       $   ·· 156.50

Doc# 2013061899

**PREPARED BY:**
U.S. Bank National Association, as Trustee
for the Residential Loan Trust 2008-2
One Federal Street, 3rd Floor
Boston, MA 02110
**WHEN RECORDED RETURN TO:**
Avenue 365 Lender Services
401 Plymouth RD, Ste. 550
Plymouth Meeting, PA 19462

Lot: 802 Square: 2636

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, U.S. Bank National Association, as Trustee for the Residential Loan Trust 2008-2, located at One Federal Street, 3rd Floor, Boston, MA 02110 ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: CPCA Trust I, located at c/o 12 S. 6th St., Ste. 950, Minneapolis, MN 55402 ("ASSIGNEE/GRANTEE") all beneficial interest under that certain DEED OF TRUST dated 1/29/2007, and executed by L. IVAN POBLETE, borrower(s) to: Rick Skogg as original trustee and Mortgage Electronic Registration Systems, Inc., as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank, its successors and assigns, as original lender, and certain instrument recorded 3/23/2007, in Doc#: 2007040525, in the Official Records of Washington, District of Columbia, given to secure a certain Promissory Note in the amount of $898,400.00 covering the following described property:

LEGAL DESCRIPTION ATTACHED AS EXHIBIT A.

Commonly known as: 4130 16th Street NW, Washington, District of Columbia  20011

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

Dated:                                         ASSIGNOR: U.S. Bank National Association, as Trustee for the
                                               Residential Loan Trust 2008-2

                                               By: _Maryellen Hunt_

                                               Name: _Maryellen Hunto_

                                               Title: _AVP_

State of _MA_

County of _Suffolic_

Before me, _Piyusha Shirname_, duly commissioned Notary Public, on this day personally
appeared _Maryellen Hunty_, _AVP_, known to me (or proved to me on
the oath of _____ or through _____) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration
therein expressed.

Given under my hand and seal of office this _2nd_ day of _May_, 20_13_.

Notary Public's Signature

Printed Name:

My Commission Expires:

## EXHIBIT A

### LEGAL DESCRIPTION

PART OF LOT NUMBERED NINETEEN (19) IN MARY GRESHAM MACHON'S SUBDIVISION OF LOTS IN SQUARE NUMBERED TWENTY-SIX HUNDRED THIRTY-SIX (2636; BEING THE EASTERLY 79.5 FEET DEPTH BY THE FULL WIDTH OF SAID LOT NINETEEN (19), AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 73 AT FOLIO 96. KNOW FOR TAX PRUPOSES A SLOT 802 SQUARE 2636.

Doc# 2013061899
Filed & Recorded
05/29/2013   11:54:25 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  ERECORD                    $      150.00
  ESURCHARGE                 $        6.50
Total:                       $      156.50

**EXHIBIT E**

# Morris | Hardwick | Schneider
**ATTORNEYS AT LAW**
National Default Division
Maryland Office
9409 Philadelphia Road  |  Baltimore, Maryland 21237
ph: 866-503-4930  |  fx: 410-282-1677

May 9, 2013

L. Ivan Poblete
4130 16th Street, NW
Washington, DC 20011

Re:   **Obligation due and owing to: US Bank Trust NA not in its individual
capacity but solely as owner trustee for CPCA Trust 1 If neither
Apply- CPCA Trust 1
Account Number: 0000706309
File Number: DC-93000165-13
Property: 4130 16th Street, NW
Washington, DC 20011**

Please be advised that our client, the lender referenced above, US Bank Trust NA not in
its individual capacity but solely as owner trustee for CPCA Trust 1 If neither Apply- CPCA
Trust 1, has referred to us the matter of the above captioned loan, and to further advise you that
the loan is now in default. Accordingly, the lender will accelerate the entire balance due under
your loan unless payment of the delinquent amount of $559,718.04 (which is good through May
7, 2013) is made within thirty days of the receipt of this letter. This figure is your reinstatement
amount. Because of interest, late charges, and other charges that may vary from day to day, the
reinstatement amount due on the day you pay may be greater. Hence, if you pay the amount
shown above, an adjustment may be necessary after we receive your check, in which event we
will inform you before depositing the check for collection. To avoid the need for such an
adjustment, please call our office at the above number for the exact amount due as of the date
you intend to tender payment.

For informational purposes only: as of May 7, 2013 the total amount necessary to pay off
your loan in its entirety is $1,461,653.43. This figure is your payoff amount. Because of
interest, late charges, and other charges that may vary from day to day, the payoff amount due on
the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may
be necessary after we receive your check, in which event we will inform you before depositing
the check for collection. To avoid the need for such an adjustment, please call our office at the

This is an attempt to collect a debt and any information obtained may be used for that purpose.

A GLOBAL WALZ LETTER - Letter Demand
DC-93000165-13
2013-05-01 @ 16:59:18 / CB

*7353635*

above number for the exact amount due as of the date you intend to tender payment. <u>This payoff amount is provided in accordance with federal law, but this letter is not a demand for payment of this payoff amount.</u> The purpose of this letter is simply to notify you of your default, the amount of the delinquency, and the fact that if the delinquency is not cured by the date specified in the previous paragraph, the entire debt on your loan will be due.

Unless the aforesaid reinstatement amount is paid within the next thirty days, we have been instructed to proceed with foreclosure and the public sale of this property. You have the right to reinstate the loan even after acceleration, if on or before the reinstatement period ends, you do the following:

1.   Pay our client all installments, and late charges due on your loan.
2.   Pay our client all reasonable expenses, including, but not limited to attorney fees, trustee fees and expenses our client has incurred in enforcing their rights.
3.   Cure all breaches of any other covenants or agreements made by you in the Note, Security Instrument and Loan Documents.
4.   Pay any and all fees required under the terms of the Note or Security Instrument.
5.   Take such other and further action, which our client may reasonably require assuring that their lien, and interest in the property is protected.

You have the right to bring a court action if you believe that the loan is not in default or if you believe that you have any other defense to the acceleration and sale. We are also required by law to inform you that if you notify us in writing that you do not wish for us to contact you by telephone at your place of employment, then no such contact shall be made. However you will need to provide our client with a phone number where you can be reached.

IF YOU HAVE BEEN DISCHARGED IN BANKRUPTCY. Please be advised that if the mortgage loan referenced has been discharged in a bankruptcy case, this statement does not represent and is not intended to be a demand for payment.

Additionally, if you previously received a discharge in a bankruptcy case involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally.

Homeownership counseling may be available to you by contacting a HUD approved housing counseling agency. Call 1-800-569-4287 or 1-800-877-8339 for the housing counseling agency nearest you.

Finally, if you should like to discuss this matter, please contact our client directly in care of Selene Finance LP at 000-000-0000.

This is an attempt to collect a debt, and any information obtained will be used for that purpose. Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this

This is an attempt to collect a debt and any information obtained may be used for that purpose.

A GLOBAL WALZ LETTER - Letter Demand
DC-93000185-13
2013-05-01 @ 18:58:18 / CB

*7353635*

debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment if one has been obtained and mail you a copy of such judgment or verification. This office will provide you with the name and address of the original creditor, if different from the current creditor, if you request the same from this office in writing within thirty (30) days after receiving this notice.

Sincerely yours,

Morris | Hardwick | Schneider

**U.S. Postal Service**
**CERTIFIED MAIL   RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7011 0110 0001 8569 3180

L. Ivan Poblete
4130 16th Street, NW
Washington, DC 20011

This is an attempt to collect a debt and any information obtained may be used for that purpose.

A GLOBAL WALZ LETTER - Letter Demand
DC-93000165-13
2013-05-01 @ 16:59:16 / CB

*7353635*



UNITED STATES POSTAGE
PITNEY BOWES
$ 000.46⁰
02 1P 0003959918 MAY 09 2013
MAILED FROM ZIP CODE 21237

Morris/Hardwick/Schneider, LLC
9409 Philadelphia Road
Baltimore, Maryland 21237

L. Ivan Poblete
4130 16th Street, NW
Washington, DC 20011



UNITED STATES POSTAGE
PITNEY BOWES
$ 006.11⁰
02 1P 0003959918 MAY 09 2013
MAILED FROM ZIP CODE 21237

CERTIFIED MAIL

7011 0110 0001 8559 3180

Morris/Hardwick/Schneider, LLC
9409 Philadelphia Road
Baltimore, Maryland 21237

L. Ivan Poblete
4130 16th Street, NW
Washington, DC 20011

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

L. Ivan Poblete
4130 16th Street, NW
Washington, DC 20011

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   □ Agent
                     □ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☑ Certified Mail      □ Express Mail
   □ Registered          ☑ Return Receipt for Merchandise
   □ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
(Transfer from service label)

7011 0110 0001 6569 3180

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**EXHIBIT F**

Department of Defense Manpower Data Center

Results as of : Aug-09-2013 07:53:00

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>POBLETE</u>

First Name: <u>L</u>

Middle Name:

Active Duty Status As Of: <u>Aug-09-2013</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940).  DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate.  In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html.  If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you.  See 50 USC App. § 521(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections.  Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service.  Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: 544B7F90G04DJ30

**EXHIBIT G**


LT1-5-2013087645-1

Return to:
Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, MD 21237


LT2-0-0-3

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

This Deed of Appointment of Substitute Trustees made this _____18_____ day of _____JULY_____ 2013,

by CPCA Trust 1 who hereby designate and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. as

Substitute Trustees (either of whom may act independently of the other) in the place and stead of Rick

Skogg as Trustees.

WHEREAS, under a certain Deed of Trust, dated January 29, 2007 and recorded among the Land

Records of District of Columbia, in Instrument #2007040525, the hereinafter described property was

conveyed to Rick Skogg, as Trustee, to secure a Note of even date therewith in the amount of $898,400.00

executed by L. Ivan Poblete and on the following secured property, to wit:

FOR LEGAL DESCRIPTION SEE ATTACHED EXHIBIT A

WHEREAS, the Deed of Trust provides that the Noteholders shall have the right and power to

substitute one or more of the Trustees in place of the original Trustees named in the said Deed of Trust.

NOW, THEREFORE, CPCA Trust 1, the current holder(s) of the Note described herein and

secured by the aforesaid Deed of Trust and in exercise of the powers contained in the said Deed of Trust do

hereby nominate, designate and appoint MARK H. WITTSTADT and GERARD WM. WITTSTADT, JR as

substitute trustees in the place and stead of Rick Skogg with all powers, rights, duties and authority of the

superseded Trustees.



DCFC - Deed Appt Of Substitute Trustees
DC-93000165-13
2013-07-11 @ 16:06:53 / BK

*7856442*

WITNESS the hands and seals of the said Noteholders.

CPCA Trust 1

By: _____

Signature: _____ Carine Foi _____

Title: _____ hu̇t. Vice President _____

Selene Finance LP as Attorney-in-Fact

State of ___ Texas ___

County/City ___ Harris ___

On this __18__ day of __July__, 2013, before me, the undersigned officer, personally appeared _____ Carine Foi _____ who is the _Asst_ _Vice President_ of CPCA Trust 1 (Noteholder), known to me (or satisfactorily proven) to be the person whose name are subscribed to the within Deed of Appointment of Substitute Trustees and acknowledged he/she executed same in his/her capacity as _Asst VP_ for the purposes therein contained.

In witness hereof I hereunto set my hand and official seal.

Bertha Villanueva Castillo
Notary Public
STATE OF TEXAS
My Comm. Exp. Oct. 2, 2014

_Bertha Villanueva Castillo_
NOTARY PUBLIC
My Commission expires: 10-2-14

## EXHIBIT A

Part of Lot Numbered Nineteen (19) in Mary Gresham Machon's Subdivision of Lots in Square Numbered Twenty-Six Hundred Thirty-Six (2636); Being the Easterly 79.5 feet depth by the full width of said Lot Nineteen (19), as per Plat recorded in the Office of the Surveyor for the District of Columbia in Liber 73 at folio 96. Known for tax purposes a lot 802 square 2636.

Doc# 2013087645 Fees:$31.50
07/29/2013   8:47AM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS IDA WILLIAMS

|  |  |  |
|---|---|---|
| RECORDING | $ | 25.00 |
| SURCHARGE | $ | 6.50 |

DCFC - Deed Appt Of Substitute Trustees
DC-93000165-13
2013-07-11 @ 16:06:53 / BK

*7856442*